**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X

In Re:

ONILDA E. MORAN-HERNANDEZ,

        Debtor.
----------------------------------------------------------X

STATE OF NEW JERSEY, DEPARTMENT
OF LABOR & WORKFORCE DEVELOPMENT,
OFFICE OF SPECIAL COMPENSATION FUNDS,

        Plaintiff,
   v.

ONILDA E. MORAN-HERNANDEZ,

        Defendant.
----------------------------------------------------------X

Chapter 7

Case No. 15-17634

Adv. No. 15-02107

APPEARANCES:

Lance D. Brown, Esq.
Lance Brown and Associates, LLC
1898 Route 33
Hamilton, New Jersey 08690
*Attorney for the Debtor/Defendant*

Lawrence J. McDermott, Jr., Esq.
Pressler and Pressler, L.L.P.
7 Entin Road
Parsippany, New Jersey 07054
*Attorney for State of New Jersey,*
*Office of Special Compensation Funds,*
*Uninsured Employer's Fund*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

## I. INTRODUCTION

This matter is before the Court by way of Onilda E. Moran-Hernandez's ("Debtor" or "Defendant") motion ("Motion") to dismiss the adversary complaint ("Complaint") filed by the State of New Jersey, Office of Special Compensation Funds, Uninsured Employer's Fund (the "Department"). A hearing on the Motion was held on November 9, 2015 and, at the request of the Court, the parties filed supplemental submissions on December 2, 2015 and December 12, 2015. For the reasons expressed below, the Defendant's Motion is denied.

## II. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. GENERAL BACKGROUND

On April 24, 2015, the Debtor filed a voluntary Chapter 7 bankruptcy petition. Bunce Atkinson was appointed as Chapter 7 trustee on April 27, 2015 and a report of no distribution was filed on June 19, 2015. The Debtor then received a discharge on August 14, 2015 and the bankruptcy case was closed that same day.

Prior to discharge, on August 7, 2015, the Department filed its Complaint seeking a determination of non-dischargeability relating to a pre-petition judgment obtained by the Department in 2011, in the amount of $290,000.00, based upon a penalty assessed against the Debtor for failure to provide workers' compensation insurance coverage. Specifically, the Department asserts that the judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(7). In

lieu of an answer, the Debtor filed the within Motion on September 11, 2015, seeking dismissal of the Department's Complaint.

Upon careful review of the pre- and post-argument submissions of the parties, and after conducting independent research, the Court determines that the Department has set forth a plausible claim, with material issues of fact remaining unresolved. Accordingly, the Debtor's Motion is denied, as discussed in more detail below.

## IV. STANDARD OF REVIEW

### (i) 12(b)(6) Motion to Dismiss Standard

In *Connelly v. Lane Constr. Corp.*, 2016 U.S. App. LEXIS 366 (3d Cir. Pa. Jan. 11, 2016), the Third Circuit Court of Appeals recently reaffirmed the standard of review when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy through Federal Rule of Bankruptcy Procedure 7012(b):

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly v. Lane Constr. Corp.*, 2016 U.S. App. LEXIS 366, *9-11 (3d Cir. Pa. Jan. 11, 2016).

**(ii)      Conversion of 12(b)(6) Motion to Dismiss to Summary Judgment**

Federal Rule of Civil Procedure 12(b)(6) states if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b)(6). "Generally, in ruling on a motion to dismiss, a . . . court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Therefore, if the moving party presents or uses materials not contained in the four corners of the plaintiff's complaint, and the court relies on such materials, the summary judgment standard should be used. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 n.4 (D.N.J. 2002). Such a determination is left to the discretion of the court, but the parties must be given adequate notice of the conversion. *Id.*

While it may be possible to determine the present case based solely on the pleadings, this Court finds that the summary judgment standard is a more appropriate mechanism for making a determination. The applicability of N.J.S.A. §§ 34:15-79 and 34:15-120.10 is a matter of law, but requires the court to consider, as discussed below, the interplay of these statutes vis-à-vis New Jersey's Appropriations Act. In this regard, the Court has accepted and considered the parties'

supplemental submissions, including the Department's certifications of Larry J. Crider, Administrator of the Department, and Joseph E. Latoof, Chief Financial Officer of the Department. These submissions, although outside of the four corners of the Complaint, serve to aid the Court in its analysis. Accordingly, the Court will treat the Debtor's Motion as a request for summary judgment with respect to the Department's claims.

### (iii) Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 1). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light

---

[1] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in *Guiliano v. Coy (In re Coy)*:

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, 2011 WL 3667607, *6-7 n.4 (Bankr. D. Del. Aug. 22, 2011).

most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted).

Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc., supra*, 477 U.S. at 249-250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

**V.      DISCUSSION**

**(i)      11 U.S.C. § 523(a)(7)**

Through the Motion, Debtor's counsel hangs his hat on a prior decision by my colleague, Judge Donald H. Steckroth, *In re Hurtado*, 2015 Bankr. LEXIS 292 (Bankr. D.N.J. Jan. 29, 2015), the facts of which closely parallel the facts herein. In *Hurtado*, as here, the Department assessed a penalty against the debtor for failure to provide workers' compensation insurance coverage and obtained a pre-petition judgment in the amount of approximately $10,000.00. In reaching his decision, Judge Steckroth noted that for a debt to be non-dischargeable under 11 U.S.C. § 523(a)(7), a creditor has the burden of proving the presence of the following elements: (1) the debtor incurred a debt; (2) the debt constitutes a fine, penalty, or forfeiture; (3) the debt is payable to a governmental unit; (4) the debt is payable for the benefit of a governmental unit; (5) the debt is not compensation for actual pecuniary loss; and (6) the debt is not a tax penalty. *In re Hurtado*, 2015 Bankr. LEXIS at *6 (Bankr. D.N.J. Jan. 29, 2015).

In finding the Department's judgment to be dischargeable, Judge Steckroth focused on the fourth element of 11 U.S.C. § 523(a)(7), finding that the debt at issue was **_not_** payable for the benefit of a governmental unit. Notwithstanding his acknowledgement that N.J.S.A. § 34:15-120.10 permits the Department to utilize a small portion ($100.00) of the penalties at issue to cover some of the administrative expenses incurred in connection with distributing benefits to workers' compensation claimants, Judge Steckroth found the Department's use to be so *de minimus* such that the Court could "not reasonably lead to the conclusion that the penalties are paid 'for the benefit of a governmental unit.'" *In re Hurtado*, 2015 Bankr. LEXIS at *9-10. Additionally, Judge Steckroth observed that "the statute places a further limitation on the use of Fund monies to cover administrative expenses by providing that the 'total amount withdrawn from the fund to cover administrative expenses shall not exceed $10,000.00 during any fiscal

7

year.'" *Id.* Thus, Judge Steckroth concluded "that the legislative intent is to provide payment to claimants, not to fund the [Department's] budget." *Id.*

The Court agrees with Judge Steckroth's view that N.J.S.A. § 34:15-120.10 itself provides for a *de minimus* benefit to governmental units, but reaches a different conclusion with respect to legislative intent. Indeed, Judge Steckroth reached his conclusion based on the record before him at that time, which is markedly different from the record currently before this Court. Pertinently, the Department has included in the record certifications by its Administrator and Chief Financial Officer, which discuss the applicability of the "Appropriations Act". *See* Adversary Proceeding Docket No. 8.

### (ii)    The Appropriations Act

"New Jersey courts have consistently adhered to the principle that the power and authority to appropriate funds lie solely and exclusively with the legislative branch of government." *Camden v. Byrne*, 82 N.J. 133, 148 (N.J. 1980). Moreover, "the Appropriations Clause 'firmly interdicts the expenditure of state monies through separate statutes not otherwise related to or integrated with the general appropriation act governing the state budget for a given fiscal year.'" *Burgos v. State*, 222 N.J. 175, 208 (N.J. 2015) (citing *Camden v. Byrne*, *supra,* 82 N.J. at 146 (N.J. 1980)). Indeed, the New Jersey Supreme Court in *Camden v. Byrne* explained:

> It follows that such a definite legislative intent as reflected in the general appropriation laws necessarily supersedes any previously expressed legislative desires at least for the duration of the particular appropriation act. The earlier statutes cannot coexist with the enacted appropriation and, consequently, must be deemed to be suspended by adoption of the later appropriation acts.

*Camden v. Byrne*, 82 N.J. at 154-155 (N.J. 1980) (citations omitted); *see also County of Camden v. Waldman*, 292 N.J. Super. 268, 291 (App. Div. 1996) (discussing *Camden v. Byrne* and finding that the Appropriations Act ***trumps*** standard statutory expenditures).

8

The Court also finds instructive the New Jersey Appellate Division's decision in *Mid-Atlantic Solar Energy Industries Ass'n v. Christie*, 418 N.J. Super. 499 (App. Div. 2011). In *Mid-Atlantic*, the Appellate Division considered New Jersey's Energy Competition Act, which limited the use of money collected under a "social benefits charge" to the purposes set forth in the Act. In considering the impact of the Appropriations Act on the Energy Competition Act, the Appellate Division held as follows:

> However this money may be characterized, the fact that the Legislature has authorized its collection and directed the purposes to which it may be allocated means that the Legislature retains the authority to change those permitted purposes. *Camden v. Byrne,* 82 N.J. 133, 153-55. Moreover, the authorization to transfer money into the General Fund is directly related to one of the basic purposes of an Annual Appropriations Act, which is to assure that there is adequate money to fund the appropriations provided thereunder. *See Karcher v. Kean, 97 N.J. 483,* 488-89 (1984). Therefore, this authorization was a proper subject for the Legislature to address through an Appropriations Act. *See id.* at 504-07.

*Mid-Atlantic Solar Energy Industries Ass'n v. Christie*, 418 N.J. Super. 499, 507 (App.Div. 2011).

In light of the foregoing, the Court finds that although N.J.S.A. §§ 34:15-79 and 34:15-120.10[2] permit the use of a small portion of penalties collected to cover administrative expenses incurred in connection with distributing benefits to workers' compensation claimants, whether those amounts are "for the benefit of a governmental unit" must be considered in conjunction

---

[2] N.J.S.A. § 34:15-79 sets forth the potential penalties for failure to obtain workers' compensation insurance and states, in relevant part, that "[t]he Commissioner of Labor and Workforce Development shall, pursuant to the 'Administrative Procedure Act,' P.L.1968, c.410 (C.52:14B-1 et seq.), promulgate rules and regulations necessary to implement the provisions of this section."

Additionally, N.J.S.A. § 34:15-120.10 states in full as follows:

> In any fiscal year during which benefit payments are made from the "uninsured employer's fund," the Commissioner of Labor shall apply an amount equal to $ 100.00 for each employee to whom such benefits have been paid from the fund toward the expenses of the Department of Labor arising from the administration of those benefit payments and the fund. However, the total amount withdrawn from the fund to cover administrative expenses shall not exceed $ 10,000.00 during any fiscal year.

9

with the Appropriations Act and the associated fiscal budget for the appropriate year. Indeed, the Appropriations Act *trumps* the standard statutory expenditures contemplated by N.J.S.A. §§ 34:15-79 and 34:15-120.10. In this regard, the Court is persuaded by the certifications of Larry J. Crider, Administrator of the Department, and Joseph E. Latoof, Chief Financial Officer of the Department (the "Certifications"), which affirm that the Department's revenue is authorized by the Appropriations Act, and generally includes the use of penalties assessed against employers who failed to maintain required workers' compensation insurance coverage. Indeed, it is inconceivable that the New Jersey Legislature would approve the Department's budget, including, at times, over $5 million in annual expenditures, without ensuring adequate revenue to balance said budget. The appropriation of additional funds through application of penalty-based revenues addresses the obvious statutory shortfall.

Whether the Department specifically utilized penalties assessed in connection with N.J.S.A. §§ 34:15-79 and 34:15-120.10 during the relevant fiscal year, however, is not yet clear on this record. Here, the Department assessed its penalty and obtained a judgment against the Defendant in 2011 in the amount of $290,000.00. Thus, the Department must demonstrate that, as part of the State of New Jersey's Brobdingnagian[3] budget for fiscal year 2011, the Department was authorized to utilize penalties assessed under N.J.S.A. §§ 34:15-79 and 34:15-120.10 as part of its operations for that year. Although the Court suspects that the Department was granted such authorization, it is not abundantly clear at this juncture.[4] Accordingly, summary judgment is not appropriate at this time.

---

[3] Origin: Brobdingnag, *First edition of Gulliver's Travels*, by Jonathan Swift (1726).

[4] Although the Certifications are very helpful in assisting the Court, the information provided is specific to fiscal years 2012, 2013, and 2014.

**VI.    CONCLUSION**

In light of the above, the Court finds that the Department's claim is plausible on its face, but that summary judgment on its claims is not appropriate at this time. The Court will enter an appropriate order denying the Motion.

Dated: February 2, 2016

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge